Good morning. Steven Gilbert, appearing for petitioner. This case, while I feel has been thoroughly discussed in the briefs, the lawyers can't stop, I guess, so I have to say something more. I think that what's important to understand about or remember about this case is that the procedural posture of the court's ruling was such that the defendant was told before the presentation of evidence that no matter what the evidence was, he was not going to be permitted to rely on the defense of provocation. This is a case where in Orange County practice at the time, and I assume still, sometimes the same judge would hear the preliminary hearing, the hearing at which we determine whether the defendant will be bound over, and later the trial. In this case, the judge, Boris, heard the preliminary hearing, he'd heard the witnesses testify, and he was familiar with the defendant's statement at the time he made the ruling. He said, I believe the evidence shows that both prongs of provocation were shown. The defendant or the underlying facts were objectively sufficient to provoke a person to act violently. And the defendant, when he acted, was acting under the influence of those provocative acts. So both the objective and subjective elements of provocation. Do you characterize that as findings of fact? Yes. Although there were no live witnesses. Well, there was testimony as to the shooting and what had happened and people testifying. At the suppression. At the preliminary hearing. At the preliminary hearing. But in addition, there were offers of proof, and there was the tape recording and transcript, which is what the court of appeal relies on, choosing an element from that to say, oh, look, he said here on page 18. But the superior court just did not make findings as such, saying I. That's an interesting question. I mean, the people here, there's a dispute.  They make contrary findings. They make contrary findings. It's a little – it's sort of a strange court of appeal ruling. I am, in many ways, for one of them – for one, I am – I was surprised that they even reviewed the claim. Normally, if you don't have a jury trial, you don't get to – Get to argue about findings, about instructions. But I guess they got to a sort of coercion issue. The argument made in the court of appeal was – Was the involuntary – Was that there was an involuntary waiver, that the waiver was essentially coerced and something that – That's strange in itself because, of course, you could have been denied a instruction you want and yet waive a jury trial for some other reason. That's right. But it was clear that this – There was no evidence taken on that point. Well, there was no evidence taken in the district court. There was no hearing. But the issue – In the superior court. In the superior court, no. It was during jury selection. There was a discussion of the defense. I use the word defense knowing that it's not truly defense, but the defense of provocation. The judge said, I think he was provoked, but I'm not going to allow you to rely on the defense of provocation because he did not personally witness the provocative acts. Right. And then the next thing that happens is he says, I waive a jury trial. I want to go. Well, counsel makes statements. He doesn't testify. What did counsel say? Counsel said the Court's ruling – I mean, this is not the most artful way to put this, but he said the Court's ruling denying us this defense has put us between a rock and a hard place. And therefore, we're going to waive jury. Now, it would have been nicer if he had said because you – I mean, he could have said a lot more than that, but he did say that. He waived jury. They went to trial. And before a judge, you thought provocation was not permissible himself. I mean, he acted as the finder of fact at the trial, and he not only thought the jury couldn't rely on it, but he thought he couldn't rely on it. He thought that you had to witness it. Okay. I mean, obviously, the Court of Appeal followed along that far. I mean, they seemed – they were willing to review the issue. It was presented to them, and they assumed that a cause-and-effect relationship between the – either the founder – they assumed a cause-and-effect relationship between the ruling and the decision to waive a jury trial. And determined that the trial judge was in error, that under California law, the leading case being Peeble v. Barton, where Mr. Barton was told by his daughter that some man spit at her, and Mr. Barton went and killed the guy. And Barton not only was permitted to rely, he was required to rely on provocation. But essentially what they held was it was harmless error or something? In our case? Yeah. No. In our case, they didn't use – I describe it – You describe it as harmless. I describe it as harmless. They don't use the phrase harmless error. What they say is, while the judge was wrong on the law, it doesn't matter because the facts don't support the defense. The judge could deny this defense because of this phrase where the defense said, I didn't care about her. Well, what the Court said was, among other things, the evidence in the record, whatever evidence there was, wouldn't support that, which you're calling a defense, but we all know it isn't.  A provocation.  Right. So the defense simply could not support it under California law. Now, as I recall, California law, if Consul thought he had more stuff to put in, nothing stopped him from making an offer of proof to the trial court and said, wait a minute, Judge, I want to have all these facts there because when we go up on appeal, I want to make sure the facts are in front of me. So the court of appeal in California particularly reviews the record as God. That's right. Indeed, it may review things, may not review things that are in the record if people haven't designated to it. It's just a, we review what we've got. And they reviewed it and said, this is the record in this case. And it doesn't matter when the trial judge filed out. The problem is that anyway, that I think it's asked. Yes, I agree with that. I think, though, it asks a lot of defense counsel. After the trial judge says, I agree with you on the facts, to say, well, I'd like to make an offer of proof of more facts. If the defendant testifies, he's going to say, yeah, I really, really was provoked. I mean. Well, we often ask a lot of defense counsel. I know. I know. I know that. In fact, as an appellate lawyer, I've been accused of that myself. But I think that. But let's say the court of appeal was wrong. I mean, just a moment. Which looks to me like it did. Isn't it a question of California law? I mean, in just finance, the question was, and the answer was, you know, it determined that under California law, he was not entitled to this instruction. And that's the qualifier. Under California law. I mean, let's say they got it wrong. Let's say we were entitled. Let's say we were the Supreme Court of California and could review this ruling and were reviewing this ruling and would look at it and say, gee, Justice Batsworth got it just wrong. Just completely muffed this issue. Would we have anything more than an error of state law, which under McGuire v. Estelle is too bad? Right. I think so. And my argument is that this is. How do you get into federal court here? Because the Bradley v. Duncan, which is a case that is cited in our reply brief, is a case where the defendant was denied the defense of entrapment. And there the Court pointed out that the reason that habeas should be granted is that the California court of appeal made an unreasonable determination of the facts within the meaning of section 2254, and that it failed to find the facts in the light most favorable to the defendant. I mean, what we have here is we have a lengthy statement from the defendant. The defendant starts out. Where is Bradley v. Duncan? Excuse me? Where is Bradley v. Duncan? It's at, where are we, 315F3rd 1091. I don't see it in your reply brief, at least not in the table of contents. Well, I'll. But I can tell from the citation that it is not a United States Supreme Court case. No, it isn't. It's a Ninth Circuit case. And let's say it all together. What happens? What authority do we, must we look to in deciding whether a principle of law is clearly established? United States Supreme Court law. Well, but. The fact that you've got circuit authority supporting that proposition is particularly fairly, it's what, 315F2nd? It's 2002, December. It's Bradley v. Duncan. A third. Right. Okay. I'm sorry. Where is it in your brief? It's at, it's at pages 9 and 10 of the reply brief. You're going to get one of those work processes that. I have one. That makes your table of authorities. I have one. But Bill Gates has this, this thing that makes my computer work, and for some reason things are not always perfect. I apologize. I'm sorry. I don't see Bradley v. Duncan. It's the quote at the bottom of, it's a single-spaced quote beginning at the bottom of page 9 through the top of page 10 of the reply brief. That's a quote, that's a quote from Bradley v. Duncan. The Supreme Court has held it as a general proposition. Okay. Got it. Now, I mean, this is something that I had actually thought about talking about and just thought I'd get in trouble. But, you know, I mean, there are Ninth Circuit cases that say I win, and there are Ninth Circuit cases that, you know, I assume the Respondent will argue that say I lose. And, you know, it's sort of, you know, my understanding is that I can cite Ninth Circuit law to the extent that it explains or construes Supreme Court authority, which is what the Court did in Condi v. Henry and in Duncan, Bradley v. Duncan. And I think that when a defendant makes a statement, as the defendant did here, and says at first, you know, the police essentially accuse him of a killing. And he says, well, I never even went there. I wasn't in the town. I, you know, I didn't kill anybody. I don't even care for this woman. That's the part that Justice Besley pointed to. I don't care for this woman. I don't love her. No, no. I think we all understand your argument. I think there was evidence going the other way. And I think maybe if, just for my part, if I were reviewing the Court of Appeal decision, I would say, gee, I think he muffed it. I think he got it wrong. But I — there is an absence of Supreme Court authority saying that you are entitled to a lesser included defense instruction at all. There's not a single Supreme Court case that holds that. And there's not a single Supreme Court case that says that you're entitled to, as a matter of constitutional law, to an instruction supporting every theory of defense. There are lots of cases saying you're entitled to a fair trial, you're entitled to present a defense, setting out the right very generally that you're entitled to present evidence, present your view of the case to the jury. But no Supreme Court case saying that you're entitled to an instruction based on every conceivable. But that strikes me as a state law question. And after McGuire v. Estelle, you can no longer say that failure to follow state law is itself a federal — which was a possible argument until then. So I think — I think — What the Ninth Circuit or panels of the Ninth Circuit have held in — maybe we should just go directly to the — and bank here. But what some panels of this circuit have held is that the right to present a defense has no meaning if there is no instruction on the defense. I mean, you know, he would have been able to have evidence of provocation, but the lawyer couldn't have told the jury, look, if you find provocation, you can find him guilty of less. I mean, essentially, in the California homicide hierarchy, we have first and second-degree murder and manslaughter, and events or factors that will reduce a crime from one to another include provocation. And there was no way for the jury to effectuate this defense if they were not going to be given instructions or verdict forms. Essentially, they hear evidence about provocation and it's meaningless. So the right to present that evidence is meaningless. I think you're four minutes into your overtime. Thank you. We'll hear from the State. Good morning, Your Honor. May it please the Court. Christine Schoen from the California Attorney General's Office. Counsel for Apolli. Your Honor, I have three points, three very quick points to make in response to counsel's arguments. First and foremost is that the trial court did not make a factual finding. First of all, the trial court — Well, it's not really essential to his argument. The argument is, if you look at the record, if you look at what was presented to the superior court, there was certainly plenty of evidence that would have supported a theory of provocation, and therefore he was entitled under State law, at least under State law and arguably under Federal law, to an instruction of that effect. The fact that there was evidence going the other way doesn't matter. The superior court need not make findings of historical fact in that context. In fact, it's not required to. All a court does in that context is determine whether or not there is enough evidence to support an instruction. And as I read California law, with exception of the opinion in this case, is it doesn't take a whole lot. And are you really going to argue that there was not enough here, that taking all of the evidence supporting defendant's theory of provocation, there wouldn't have been enough here to support an instruction? No, Your Honor. That is not what I'm — that is not the argument. Good. I mean, essentially the court of appeal must — I mean, it really got it wrong in this case. The court of appeal looked at all the evidence supporting the prosecution, ignored the evidence supporting the defense, and said, oh, we're not convinced anyway, so the court — the superior court got it right on the wrong theory. Well, Your Honor, if I may just clarify. The court of appeal did not ignore the evidence in support of the defense. What happened was the court of appeal had the benefit — Okay. Let's look at it together. Where does it mention the evidence supporting the defense? I have the court of appeal opinion right here. And I am happy to go over it with you. Do you have it? Your Honor, well, no. What I was — what I was going to say was that — You just said something, and now you're not going to give me any evidence. You said the court of appeal did not ignore his evidence. And I didn't find it in the opinion, so are you going to tell me where in the opinion it actually does? Well, Your Honor, if I may, in response, I guess what I was trying to say was that the trial court had looked — excuse me, the court of appeal had looked — You're withdrawing that statement? I'm sorry? You're withdrawing that statement? Well, yes. You said the court of appeal did not ignore. Okay. Yes, Your Honor, I am withdrawing that statement, if I may. Okay. I apologize. I misspoke. What I would — what I was trying to say was that — So the court of appeal did ignore. The court of appeal had looked at the entire record, Your Honor, and that included the defendant's statements, which the trial court — But it's not supposed to look at the entire record. It's supposed to look at the defendant's evidence. Well, Your Honor — It's not supposed to sit here and wait and decide how a jury would decide it. The court of appeal is supposed to look and see whether the evidence presented supporting the instruction is there, whether it was — whether the evidence of the defendant claims to support the instruction, in fact, does. Where does the court of appeal do that? Well, no, Your Honor. Well, the court of appeal, in looking — what I — the court of appeal had looked at the entire record. And what I'm trying to say is that the trial court did not have the benefit of looking at all the evidence in total. It did not have the defendant's statement. It didn't have any of that. It based its decision at the time on the scant evidence — I'm sorry. Just please explain this to me. What difference does that make? Why is a court, as under California law, required to look at the entire record? If there is evidence supporting a defense theory, even if there's a ton of evidence going the other way, isn't California law quite clear that he's entitled to instruction? Because the jury might disregard or disbelieve the large body of evidence supporting the prosecution and might believe only the evidence supporting the defense. So what does looking at the entire record have to do with anything? Well, Your Honor, two points, if I may. The first point is that — One good point would be helpful. I hope these will work. Okay. First of all, the court of appeal in examining the entire record, it's basically trying to determine whether there was any evidence to support the giving of that instruction. Okay. And there was no evidence supporting the giving of that instruction. Wasn't there a statement from him about how much he loved her and how much he cared for her? No, Your Honor. And wasn't the very fact that there was no, absolutely no animosity between him and the people involved except for the phone call from the girlfriend, from the former girlfriend, from her? I mean, he goes over there right after he gets a phone call. Apparently he has no prior relationship to these people, pulls a gun and shoots. Why isn't that in itself enough evidence from which a jury could draw an influence of provocation? Your Honor, first of all, that statement about how he loved Herrera, that was not before the trial court, when the trial court had made its ruling. That was a statement that came in through the evidence that was later on presented at trial. So the trial court did not have that. But second of all, I do agree with you that the trial court's factual findings is not at issue — I mean, it's not what we're here to review at this point. What we're here to review is whether the State court of appeals' decision and adjudication of the claim was contrary to or involved in unreasonable application of any clearly established Federal law as determined by the U.S. Supreme Court, and whether or not it was based on an unreasonable factual determination of the evidence that was presented at trial. And I would say — I think it's or, isn't it? I'm sorry? I think those are separate prongs. Right. Well, I guess what I'm — It's not and. It's or. You're right, Your Honor. And what I am trying to say is that we don't have either. Number one, the State court of appeals' adjudication of the claim was not contrary to and did not involve an unreasonable application of any clearly established Federal law as determined by the U.S. Supreme Court. Moreover, and above all that, it was — the State court of appeals' adjudication of the claim was not based on any unreasonable factual determination. And that is supported by the district court's independent review of the record, a finding similarly that there was no evidence to support any theory of provocation or heat of passion. The district court reached the same factual finding, and therefore, that would support and show that the State court of appeals' — the State court of appeals' decision was not based on any unreasonable factual determination. Well, let's take it in reverse order. The guy gets a call from a former girlfriend, and we have some evidence that he didn't care for her, but, of course, she had — she was the mother of his child. Yes? And she says, be sure to bring a gun, this guy. Be sure to bring a gun. And he does that, brings a gun, and shoots the guy. Why isn't that — shoots the wrong guy, of course, but he thinks he's shooting the right guy. Why isn't that evidence enough? The fact that the shooting came after the phone call, and there's an absence of any other motive, evidence of any other motive, why isn't that enough where a jury, looking just the right way at the evidence, would say, gee, the guy was provoked? And I don't know what happens in the California law. I guess you get mitigation of some sort. Your Honor, if I may respond, I don't believe that Yanet Herrera had told the defendant or the appellant in this case to bring a gun. She did tell him this guy was harassing her. She did say that, however — And was there any evidence that he had any other reason to go over there except that he got this call from Herrera? No. He was going to go and meet her. It was more out of loyalty than anything else. I think that the record shows that he certainly was not acting under the heat of passion or provocation. Number one, he met her approximately 45 minutes after the phone call. Number two, he stated to the police that he never really cared for Yanet Herrera. Number three, outside Martinez's residence — Well, that's what the court of appeals said, but still he went. I mean, he got the call. If he really didn't care for her, he should have stayed home. I mean, I just keep sticking my throat in. The court of appeals was so taken with this one statement to the exclusion of everything else. Well, Your Honor, I believe that — Let's talk about the other problem because time is getting short. There is U.S. Supreme Court authority for the proposition that you are entitled to — the defendant is entitled to present a defense. Your Honor, if I could — Fair presentation of defense, no? Yes, Your Honor, but however — And provocation is a doctrine that mitigates criminal culpability in California, is it not? Yes, Your Honor. However, I believe that the U.S. Supreme Court authority also specifies that a defendant is entitled to those instructions if it is supported by the record and if it is supported by the evidence, which we do not have here in this case. There is no evidence to support that the defendant — that the appellant acted under the heat of — So you agree that if we look at this record and find that the — that the instruction is or would have been supported by the evidence, then you agree that under Supreme Court authority, that would be a violation of Federal law as established by Supreme Court authority? Well, Your Honor, yes, I do agree with that. But, however, that's not what we're here to review, Your Honor. What we're here to review — Do you agree that you're entitled to lesser-included defense instructions? I'm sorry, Your Honor. I didn't hear the question. Do you agree that under Supreme Court authority, the Supreme Court has said that in a noncapital case, you're entitled to a lesser-included defense instruction? No, Your Honor. Your Honor, I do disagree with that, because Beck v. Alabama states that a defendant is not entitled to lesser-included offense instructions in a noncapital case. You should be — you should always be agreeable, but don't be too agreeable. Yes, Your Honor. I do agree with that. Well, I think there's a little bit of a conflict now between you. You've now agreed with Judge Fernandez. You've agreed with Judge Krasinski, with me. And now you — and it seems to me that your agreement — you can't be agreeing with both of us, because if, in fact — Well, you do agree that there is no existing Supreme Court authority that holds that a defendant is entitled to a lesser-included offense instruction. And, yes, I do — Right? Yes, Your Honor, I do agree with that. But now you agree with two of us. Exactly. I was going to say, it seems like now I'm agreeing with all three. But you're agreeing with the same question. The problem is you still agree with me. And maybe you want to change your mind. This is — this is — you know, you can modify your answer if you want. Your Honor, I — We're talking about — excuse me. I'm sorry. I didn't mean to interrupt you. But you did. You — we're talking about U.S. Supreme Court cases that say you're entitled to present your defense. There clearly are cases like that. Do you agree with that, that you're entitled to present a fairly presented defense to a jury? Yes, if it — if there is evidence to support the record. However — Okay. So — and you agree that part of presenting a defense is getting an instruction to the jury that supports your theory of the case as — as supported by state law. Right? Do you agree with that? Well, if it — If state law gives you a defense, you are entitled, as a matter of Federal due process, to present that defense to the jury, including to get an instruction supporting that defense. Is that — do you agree with that? Well, no, Your Honor. I do — I disagree with that because, first of all, a defendant — So you could deny the self-defense instruction, even though state law provides for self-defense as a — as a — as a total defense to a criminal charge. The State can just say, we're not going to give you an instruction. Let the jury guess about that. That would be okay under established Supreme Court authority. Is that what you're saying? Well, no, Your Honor. What I'm trying to say is two points. First and foremost, that a defendant is — that jury instructions should be given on a — on a pursuit of a defense if there is evidence to support it. But second one — And you're entitled to that as a matter of Federal due process if the evidence supports it. Right. But, however, if it's a lesser-included offense, there — under Beck v. Alabama, a defendant is not entitled to instructions on the lesser-included offense. There is no constitutional right to that instruction. Well, Beck does not — Beck does not preclude it. Beck simply says you're entitled to them in death cases. Does Beck actually preclude a lesser — preclude the possibility that you're entitled to a lesser-included offense instruction? Well, Your Honor, it doesn't preclude it, but it certainly states that it's not — Okay. And you do agree that you're entitled — that you have Supreme Court cases saying you're entitled to present a defense. You're entitled to present a defense, Your Honor, but that defense does not include an instructional theory. Presenting a defense means presenting defense evidence. It means presenting defense witnesses. It's not an instructional theory. You can leave the jury in the dark. Even though state law gives you a theory of the defense, you can put in all the evidence you want, but you're not entitled to have, as a matter of federal law, entitled to have the jury told what the significance — what the legal significance is of that evidence. So if state law says you're entitled to — self-defense is an absolute defense, let's say, you could present evidence, but you're not, as a matter of federal law, entitled to an instruction. That's the position of the State of California. Is that what I hear? Well, Your Honor, that's my position in this case, which is that — Well, I don't really care about Christine — I'm sorry. I understand. I really — I truly am hoping that you're speaking for your client and not in your — I mean, I — I apologize. I assume, right? Yes. I'm really not interested in your personal position. I'm asking for the position of the State of California. The State of California's position is that even though state law allows you a defense, you're not entitled to an instruction. I just want to know. Well, you're not — you're not entitled to an instruction on that defense unless there is — there is evidence to support it in the record. But, Your Honor, I believe there is a — I don't know third base. You are — we're back to the question of whether or not — I promise this. Let's say we look at the evidence and find, contrary to what you would like us to find, that there was evidence supporting that instruction. Assume that. I know it's a scary thought, but why don't you assume that, just for the sake of the question? That there was evidence? That there was evidence, in fact, that would have supported that publication instruction. Assume we look at the record, and that's what we determine. Your Honor, but even assuming that, though, even assuming that is the case, the appellant in this case is still not entitled to habeas relief because the — his waiver of the right to — his waiver of a jury trial was not based solely on that court's ruling. That's a — that's a very good argument, and one that you didn't make in your brief. And certainly — certainly, you know, I looked for it, and I said, gee, why are they doing this? It's a very good argument, but it's a little late. It's also a little late because the Court of Appeal actually ruled on it that way. It assumed, or it seemed to hold, that, in fact, there was a factual — I have no idea why they did that. Well, Your Honor, but the fact of the matter is that the State Court of Appeal's decision and adjudication of this claim was not contrary to or involved in unreasonable application of any established Federal law as determined by the U.S. Supreme Court. We don't have that. And on top of that, the State Court of Appeal's adjudication of the claim was not based on any unreasonable factual determination of — any unreasonable termination of the fact in light of the evidence was presented at trial. And for those two reasons, the defendant is not entitled to habeas relief. Roberts. Okay. Thank you. Thank you, Your Honor. You can have 30 seconds. I think that — that our view is that the right to defend — to present a defense means something more than the right to bring in a witness and put him on the stand and ask him questions. I mean, the defense of provocation has no meaning without instructions. And not only instructions, but no verdict forms. I mean, even if the jury — even if counsel were allowed to argue it, there would be no — the only verdict forms are guilty or not guilty. There's no manslaughter verdict form if the judge doesn't allow the defense. I think that this is a wholesale preclusion of a defense attempt to present a proper defense, and that I pray the Court will see it the same way. Thank you. Thank you so much. Okay. This argument stands submitted.
judges: Kozinski, Fernandez, Rymer